IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AWA DULLEH,

    Petitioner,

v.

WARDEN CASEY CAMPBELL,

    Respondent.

Civil Action No.: GLR-20-2051

## MEMORANDUM OPINION

THIS MATTER is before the Court on self-represented Petitioner Awa Dulleh's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.[1] Having reviewed the Petition as supplemented and amended (ECF Nos. 1, 3, 7), Respondent Warden Casey Campbell's Answer (ECF No. 9), and Dulleh's replies (ECF Nos. 11, 14), the Court finds no need for an evidentiary hearing. See R. Govern. § 2254 Cases U.S. Dist. Ct. 8(a); 28 U.S.C. § 2254(e)(2); Local Rule 105.6 (D.Md. 2021); see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (noting that a petitioner is not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth below, the Court will deny the Petition and decline to issue a certificate of appealability.

---

[1] Also pending before the Court is Dulleh's Motion to Provide Requisite Information Entitling Petitioner to Equitable Tolling (ECF No. 14) and Motion for Evidentiary Hearing (ECF No. 15). Because the Court will deny the Petition, it will deny these Motions as moot. To the extent that this Motion seeks leave of Court to file a Response to the Answer, it shall be denied. To the extent the purpose of Dulleh's Motion to Provide Requisite Information is to provide the Court with additional factual and legal support for his Petition, the Court has considered the contents of the Motion in reaching this Opinion.

## I. BACKGROUND

### A. State Proceedings

#### 1. Case No. 125082

Petitioner Awa Dulleh was charged with sixteen counts relating to four different victims: four counts of armed robbery, four counts of first-degree assault, four counts of conspiracy to commit armed robbery, and four counts of conspiracy to commit first-degree assault. (State R. at 15, ECF No. 9-1).[2] On January 28, 2015, following a trial in the Circuit Court for Montgomery County, Maryland, the jury convicted Dulleh on all counts except for one count of armed robbery. (Id.).

On April 10, 2015, Dulleh was sentenced to serve an aggregate of twenty-five years imprisonment as follows: count one: armed robbery, twenty years, all suspended but ten years; count five, armed robbery, twenty years, consecutive, all suspended but ten years; count nine, armed robbery, twenty years, consecutive, all suspended but five years; count fourteen, conspiracy to commit armed robbery, twenty years, concurrent, all suspended but five years. (Id. at 17). The remaining counts were merged for sentencing purposes and Dulleh will be required to serve five years of probation upon his release. (Id.).

Dulleh appealed his conviction to the Court of Special Appeals of Maryland, arguing that the trial court erred in admitting irrelevant, prejudicial, or otherwise impermissible evidence of other crimes, wrongs, or acts. (Id. at 42). On June 30, 2016, the

---

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Court of Special Appeals affirmed Dulleh's convictions in an unpublished opinion. (Id. at 41–48). The Court of Special Appeals mandate issued on August 1, 2016. (Id. at 19).

On August 19, 2016, Dulleh filed a Petition for Writ of Certiorari with the Court of Appeals of Maryland. (Id. at 75–85). In an Order dated November 23, 2016, the Court of Appeals denied the Petition as untimely. (Id. at 86).

On April 30, 2015, Dulleh filed an application for sentence review by a three-judge panel. (Id. at 18). On February 2, 2016, the panel affirmed Dulleh's sentence without a hearing. (Id. at 19).

### 2. Case No. 126945

On March 19, 2015, Dulleh was indicted in Montgomery County on two counts of armed robbery and two counts of conspiracy to commit armed robbery. (Id. at 24). Following a jury trial, Dulleh was found guilty on all counts. (Id. at 36).

On April 21, 2016, Dulleh was sentenced to serve two consecutive ten-year terms for the armed robbery counts and two concurrent ten-year terms for the conspiracy convictions. (Id. at 37). The aggregate sentence was made "consecutive to any sentence being served." (Id.).

Dulleh filed an appeal of this conviction with the Court of Special Appeals of Maryland, asserting that the trial court erred by admitting evidence of the victims' level of certainty regarding Dulleh's identity as their assailant; by limiting defense counsel's closing argument; and by sentencing Dulleh on multiple conspiracy counts. (Id. at 52). In an unpublished opinion dated June 20, 2017, the appellate court vacated one of the conspiracy convictions and affirmed the remaining convictions. (Id. at 51–72). The Court

3

of Special Appeals mandate issued on June 20, 2017. (Id. at 39). Dulleh did not seek review in the Court of Appeals of Maryland.

The Court of Special Appeals remanded Dulleh's case to the Circuit Court of Maryland for Montgomery County with instructions to vacate his conviction on Count 4, conspiracy to commit armed robbery. (Id. at 74). On January 12, 2018, the Circuit Court resentenced Dulleh as directed by the appellate court. (Id. at 40). Dulleh did not file any post-sentencing motions or a petition for post-conviction relief with respect to this conviction.

**B.     Federal Petition**

On July 13, 2020, this Court received Dulleh's first Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, which was post-marked July 9, 2020. (ECF No. 1). Dulleh supplemented his Petition on October 13, 2020 (ECF No. 3), and later filed an Amended Petition that the Court received on December 11, 2020 (ECF No. 7). The claims he asserts in this Court are as follows: (1) his due process rights were violated when he was not permitted to attend any of the preliminary hearings which led to postponements of the trial date; (2) "facts from [Authentic] Documents" prove his actual innocence; (3) "Brady[3] violation," premised on his assertion that a police detective testified that a ski mask belonged to Dulleh despite no evidence of Dulleh's DNA on the mask; and (4) "Brady violation Key witness/co-defendants," premised on his assertion that during Dulleh's transport back to a detention facility with Ashley McLane, McLane told Dulleh she had

---

[3] Brady v. Maryland, 373 U.S. 83, 87 (1963).

4

made a deal with the State and knew he had nothing to do with the crime. (Am. Pet. at 5, ECF No. 7).

On January 5, 2021, Respondent filed a Limited Answer asserting that the Petition is time-barred under 28 U.S.C. § 2244. (ECF No. 9). On February 2, 2021, Dulleh filed a Reply (ECF No. 11). On April 7, 2021, the Court granted Dulleh an opportunity to file a response addressing whether there are grounds to excuse the untimely filing of his Petition. (ECF No. 13). Dulled filed a Motion to Provide Requisite Information Entitling Petitioner to Equitable Tolling on April 30, 2021 (ECF No. 14), and on June 8, 2021, filed a Motion for Evidentiary Hearing (ECF No. 15).

## II.  DISCUSSION

**A.  <u>Standard of Review</u>**

With limited exceptions, this Court may not reach the merits of claims raised in a petition filed pursuant to 28 U.S.C. § 2254 if it is filed outside of the time limits delineated in 28 U.S.C. § 2244(d)(1). That provision states that a one-year limitation period runs from the latest of the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, Dulleh did not file a post-conviction petition in either case.

The filing limitation "is also subject to equitable tolling in 'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party.'" Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). To be entitled to equitable tolling, a petitioner must establish that either some wrongful conduct by respondents contributed to his delay in filing his petition or that circumstances that were beyond his control caused the delay. See Harris, 209 F.3d at 330. "[A]ny resort to equity must be reserved for those rare instances where . . . it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Id. The Fourth Circuit has made it clear that, prior to dismissing a pro se petition for writ of habeas corpus, "a district court should furnish notice that simply warns the pro se petitioner that his § 2254 action will be dismissed as untimely unless the petitioner can demonstrate that the petition was filed within the proper time period." Hill, 277 F.3d at 708.

Courts have also permitted petitioners to advance untimely petitions based on claims of "actual innocence." See Schlup v. Delo, 513 U.S. 298, 324 (1995). Actual innocence is

an "equitable exception to § 2244(d)(1), not an extension of the time statutorily prescribed." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citation omitted). Thus, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." Id. The merits of a petition that is concededly time-barred may nevertheless be reached if "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" Id. at 394–95 (quoting Schlup, 513 U.S. at 329). In the context of an untimely petition, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." McQuiggin, 569 U.S. at 399. "It would be bizarre to hold that a habeas petitioner who asserts a convincing claim of actual innocence may overcome the statutory time bar § 2244(d)(1)(D) erects, yet simultaneously encounter a court-fashioned diligence barrier to pursuit of [his] petition." Id. (citation omitted). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Id. at 392 (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)).

Examples of the type of new evidence that have been found to satisfy the actual innocence "gateway" standard, sometimes referred to as the "Schlup standard," are: (1) new DNA evidence and expert testimony "call[ing] into question" the "central forensic proof connecting [the petitioner] to the crime," or "substantial evidence pointing to a different suspect," House v. Bell, 547 U.S. 518, 554 (2006); (2) "sworn statements of several eyewitnesses that [the petitioner inmate] was not involved in the crime" and

affidavits "that cast doubt on whether [the petitioner inmate] could have participated" in the offense, Schlup, 513 U.S. at 331; (3) a third party's consistent and repeated statement that the third party committed the offense, see Jones v. McKee, No. 08 CV 4429, 2010 WL 3522947, at *9–10 (N.D.Ill. Sept. 2, 2010); see also Carringer v. Stewart, 132 F.3d 463, 478–79 (9th Cir. 1997) (finding that the petitioner opened the actual innocence gateway where another person testified under oath that he committed the offense and separately boasted to other individuals that he set-up the petitioner); and (4) documentary and testimonial evidence supporting petitioner's position that he was in another country at the time the offense occurred, see Garcia v. Portuondo, 334 F.Supp.2d 446, 452–56 (S.D.N.Y. 2004).

Whether a petitioner has satisfied the miscarriage of justice exception requires the reviewing court to consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House, 547 U.S. at 538 (citation and internal quotation marks omitted). The new evidence must be evaluated "alongside any other admissible evidence of the [petitioner's] guilt." Wilson v. Greene, 155 F.3d 396, 404–05 (4th Cir. 1998) (citation omitted). To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. Schlup, 513 U.S. at 324. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Id. at 316.

The Supreme Court "caution[s], however, that tenable actual-innocence gateway claims are rare: [A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt." Perkins, 569 U.S. at 386 (internal quotation marks and citations omitted); see also Wilson, 155 F.3d at 404 ("Claims of actual innocence . . . should not be granted casually." (citations omitted)). To sustain a credible claim of actual innocence, a petitioner must marshal "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S at 324. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Id. The gateway actual innocence "standard is demanding and permits review only in the 'extraordinary' case." House, 547 U.S. at 538 (citation omitted); see also Perkins, 569 U.S. at 401 ("We stress once again that the Schlup standard is demanding."); Wilson, 155 F.3d at 404 ("Claims of actual innocence . . . presented . . . as gateways to excuse a procedural default . . . should not be granted casually." (citations omitted)).

"At the same time, though, the Schlup standard does not require absolute certainty about the petitioner's guilt or innocence." House, 547 U.S. at 538. "Rather, the petitioner must demonstrate that more likely than not, in light of new and reliable evidence, no reasonable juror would find him guilty beyond a reasonable doubt." Teleguz v. Zook, 806 F.3d 803, 809 (4th Cir. 2015) (citing House, 547 U.S. at 538). The actual innocence determination "requires a holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard." Bell, 547 U.S. at 539 (citations

and internal quotation marks omitted); accord Finch v. McKoy, 914 F.3d 292, 299 (4th Cir. 2019).

In reviewing the record, the Court must "make a probabilistic determination about what reasonable, properly instructed jurors would do. The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." House, 547 U.S. at 538 (citations and internal quotation marks omitted). Thus, Dulleh must "demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice." Teleguz, 689 F.3d at 329 (citation omitted). Only if Dulleh "passes through the Schlup gateway by satisfying this standard" may the Court consider and reach the merits of his claims. Id.

**B.     Analysis**

    **1.     Case No. 125082**

The conviction in Case No. 125082 became final on August 16, 2016, the last day Dulleh could file a timely petition for writ of certiorari with the Maryland Court of Appeals. See Md. Rule 8-302(a). Since Dulleh did not file a timely petition for writ of certiorari, the date the petition was due is the operative date for determining when his conviction was final.

Dulleh's application for a three-judge panel review did not operate to toll the one-year filing deadline for seeking federal habeas relief as it was filed and decided prior to August 16, 2016, and thus before the limitations period started to run. Under these facts,

the one-year filing limitation expired on August 16, 2017. This Petition was not filed until July 9, 2020, (see ECF No. 1), and is therefore untimely.

### 2. Case No. 126945

In Case No. 126945, Dulleh was resentenced by the Circuit Court at the direction of the Court of Special Appeals of Maryland on January 12, 2018, and no further proceedings took place in that case. Dulleh's conviction became final on that date. "[T]he limitations period under § 2244(d)(1)(A) runs from the judgment entered upon resentencing—even if . . . the defendant's habeas petition challenges the underlying conviction." Woodfolk v. Maynard, 857 F.3d 531, 542 (4th Cir. 2017) (citations omitted). After the one-year filing limitations began to run in this case, it was not tolled by post-sentencing or post-conviction proceedings. It therefore expired on January 12, 2019, one year after the Court of Special Appeals' decision. Dulleh's federal habeas Petition is thus also untimely with respect to this conviction.

### 3. Actual Innocence

Although couched in terms of equitable tolling, Dulleh asserts that he is actually innocent of the crimes for which he was convicted. (See Am. Pet. at 5, ECF No. 7). He does not point to any impediment to complying with the one-year filing deadline for a federal habeas petition; rather, he states that there were errors committed at trial that resulted in his wrongful conviction. (See Mot. Provide Requisite Information Entitling Pet'r Equitable Tolling ["Surreply"] at 1–4, ECF No. 14; Mot. Evidentiary Hr'g ["Mot. Hr'g"] at 1–2, ECF No. 15). He claims that witnesses for the State falsely testified that they were not offered deals from the State in exchange for their testimony, (Surreply at 2), and

that the cell phone allegedly stolen from one of the victims is actually his cell phone and does not inculpate him in the robbery, (Mot. Hr'g at 1–2). In addition, he states in his Petition that a State's witness told him she lied on the stand when she testified that he was involved, (Am. Pet. at 5), and that police detectives pressured him to provide evidence against others and when he refused, he was told he would be made to pay, (Surreply at 1).

None of the evidence Dulleh cites is newly discovered. Rather, the evidence he relies on to support his assertion of actual innocence is evidence that was introduced at trial or known at the time of his trial. To the extent it was considered by the juries in either of his criminal cases, it is clear the evidence did not make it more likely than not that a reasonable juror would conclude that Dulleh was not guilty. See Schlup, 513 U.S. at 329. He has therefore failed to satisfy the actual innocence gateway for consideration of his untimely Petition and the merits of his claims may not be considered by this Court.

### 4. Certificate of Appealability

When, as here, a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can "demonstrate both (1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Dulleh may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. See Lyons v. Lee, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss the Petition. A certificate of appealability shall not issue. A separate Order follows.

Entered this 13th day of July, 2021.

/s/
George L. Russell, III
United States District Judge